IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JIT CONCEPTS, INC.

    Plaintiff,

                v.   No.:   02-2891-DV

SHELBY COUNTY HEALTHCARE
CORPORATION d/b/a REGIONAL
MEDICAL CENTER AT MEMPHIS,

    Defendant.

---

### JOINT PRE-TRIAL ORDER

A pretrial conference is scheduled in this matter for 8:45 a.m. on Wednesday, May 11, 2005, before the Honorable Bernice Donald, United States District Judge.

### THE PARTIES

The following counsel will be appearing:

A.   For the Plaintiff:

    Michael G. McLaren
    Sherry S. Fernandez
    Black,  McLaren, Jones & Ryland
    530 Oak Court Drive, Suite 310
    Memphis, Tennessee  38117
    (901) 762-0535

B.   For the Defendants:

    Thomas W. Lewis
    Donna L. Boyce
    Sara Falkinham

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  5-12-05



Armstrong Allen, PLLC
80 Monroe Avenue, Suite 700
Memphis, Tennessee 38103
(901) 524-4926

## PLEADINGS

The Pleadings are amended to conform with this Pretrial Order.

## JURISDICTION

Jurisdiction is proper in this Court, as this matter is brought pursuant to 28 U.S.C. § 1332.

## PENDING MOTIONS

Plaintiff's Motions in Limine are currently pending before the Court.

## STATUS OF DISCOVERY

All discovery is complete at this time.

## SETTLEMENT NEGOTIATIONS

The parties participated in mediation on November 22, 2004. The mediation was not successful and the parties have not engaged in any settlement negotiations since mediation.

## CONTENTIONS OF PLAINTIFF

1.   That in December 1999, JIT and The MED entered into a contract whereby JIT would provide services, including but not limited to, bronchoscopy and laparoscopy, for The MED. The contract was to run between January 1, 2000, and December 31, 2004.

2.   The Contract was a valid contract between the parties.

3.    The Contract did not provide for unilateral termination of the Contract.

4.    The Contract provided that:

> JIT shall rectify, within 60 days, any problems/concerns for the HOSPITAL [The MED] upon receipt of written notice of said concern.

5.    In or about May 2002, The MED requested a proposal from Stryker Corporation and Stryker Endoscopy for a contract to replace JIT and provide services that JIT had contracted to provide for The MED pursuant to the Contract between JIT and The MED.

6.    During the late spring, summer and early fall of 2002, The MED and Stryker Corporation and Stryker Endoscopy were engaged in negotiations over a new contract whereby Stryker Corporation and Stryker Endoscopy would replace JIT and provide the services to The MED that JIT had contracted to provide The MED.

7.    Stryker Corporation and Stryker Endoscopy offered The MED lower prices for services and offered to provide new equipment to The MED in exchange for obtaining the contract with The MED.

8.    In early October 2002, Stryker and The MED reached an agreement for Stryker to provide the services to The MED that JIT had contracted to provide to The MED.

3

10.   On October 21, 2002, **after** The MED and Stryker reached their agreement, The MED notified JIT that The MED was terminating the Contract with JIT effective November 21, 2002.

11.   On October 22, 2002, JIT requested, in writing, for The MED to specify, in writing, any problems/concerns of The MED with the services provided by JIT pursuant to the Contract between JIT and The MED.  JIT specifically requested it be given its sixty (60) day cure period as specified in the Contract.

12.   JIT has suffered monetary damages as a result of The MED's breach of the Contract.

## CONTENTIONS OF THE DEFENDANT

The Med is a hospital, including a regionally recognized trauma center, which is located in Memphis, Tennessee.  The Med is a teaching facility in which medical students and post-graduate residents receive medical education and training offered by various faculty members of the University of Tennessee School of Medicine. The Med is a significant source of hospital care and medical treatment for ennumerable insured and uninsured patients throughout the Mid-South, who might otherwise not have access to necessary hospital care and medical services.  At all times, The Med strives to provide its patients with the highest possible level of hospital care.

4

The physicians who practice at The Med, including those physicians who are members of the University of Tennessee medical school's faculty, are not employees of The Med. Rather, they are independent practitioners who enjoy hospital privileges at The Med. However, such physicians have significant input as to patient care concerns and The Med seeks and relies on their opinions, as pertains to patient care, in making certain business decisions.

Annually, thousands of surgeries and related medical procedures of various natures and types are performed at The Med. These include conventional and traditionally recognized surgeries, as well as more recently developed minimally invasive surgeries, which offer the patient a lower incidence of complications, shorter hospital stays, and generally faster recovery time. With advances in medical science, an increasing number of surgeries, which had been performed using more conventional and traditional means, can now be performed by means of minimally invasive surgery. In certain circumstances, The Med relies on outside contractors, such as JIT, to provide support for surgical services. The Med relies upon the expertise of such contractors to deliver quality patient care.

Prior to December 31, 1999, JIT provided certain conventional and minimally invasive surgical support services at The Med on an invoice basis. Pursuant to the relationship which existed in that

5

time period, JIT would provide equipment and support services with respect to surgeries being performed at The Med and would then submit an invoice to The Med for payment.   At some point, JIT apparently believed that the invoice arrangement was no longer acceptable from a business standpoint and requested that JIT and The Med enter into a longer term contract.

As a result of JIT's request, the parties ultimately agreed to a contract with a term of January 1, 2000 through December 31, 2004. The contract was drafted by JIT, such that any ambiguities in the contract should be construed most strongly against JIT.   Among other terms, the contract specifically provided:

> JIT **shall rectify**, within 60 days, **any problems/concerns for the HOSPITAL** [The MED] upon receipt of written notice of said concern.   (Emphasis Added)

Although the quoted passage contemplates written notice of problems or concerns, the evidence elicited during discovery establishes that the course of performance between the parties was such that JIT expected to respond to verbal notices of complaints or problems, in addition to those which were placed in writing.

Initially, JIT performed reasonably well under the new contractual relationship.   The equipment JIT provided at The Med was relatively new and in good, servicable condition.   Additionally, the equipment was well supported by JIT's technicians.

6

Unfortunately, as time passed, the level of JIT's equipment and services declined noticably. It was evident that JIT was either unwilling or unable to invest the sums of money necessary to purchase new equipment or maintain existing equipment as the needs of The Med required. Additionally, the physicians and clinical staff at The Med also had complaints regarding the level of support they were receiving from JIT's technicians. The inadequate performance of JIT's equipment and personnel became an issue of patient safety. The evidence at trial will establish that the medical staff was frequently unable to visualize surgical fields through JIT's optical scopes, because those scopes were dirty, had become cloudy, or had otherwise fallen into disrepair. There is evidence of at least one surgery which had been planned as a minimally invasive procedure, but was converted to a general surgical procedure due to the inadequacies of equipment supplied by JIT.

Based upon the course of performance between the parties, these types of problems were frequently brought to the attention of JIT's on-site staff verbally, but were never adequately corrected. In late 2001, The Med requested that representatives from JIT's home office in Ohio travel to Memphis to meet with Med administrators and clinicians regarding the problems with JIT's equipment and technical support. Although JIT's President and National Clinical Manager made

the trip from Ohio, inexplicably, JIT elected not to include its site manager in the meeting. During this meeting, The Med's clinical staff discussed a number of areas of dissatisfaction with JIT's representatives and insisted that immediate action be taken by JIT to rectify The Med's concerns. During the meeting, when asked how The Med could terminate the relationship with JIT, JIT's president, Jack Coenen, simply stated "you can't", thereby indicating a total disregard for The Med's concerns as to the quality of JIT's services and equipment and the patient care risks presented thereby.

In the wake of the meeting, JIT's National Clinical Manager, Tom Hink, remained on-site at The Med for approximately one week to monitor JIT's equipment and services. However, notwithstanding the magnitude of The Med's concerns, both Mr. Hink and JIT's site manager, Marilyn Rucker, have testified that JIT did not make any significant changes in its services following the meeting.

For a period after the meeting, The Med's representatives noted some degree of improvement in JIT's equipment and services. However, thereafter, JIT's services and equipment quickly returned to the unacceptable level that had resulted in the meeting in late 2001. As a result, The Med considered the possibility of replacing JIT with another contractor which was prepared to meet The Med's requirements as to equipment and technical support.

8

At approximately the same time, members of the faculty of the Department of Surgery at the University of Tennessee Medical School were exploring the possibility of establishing a regional center for minimally invasive surgery at The Med.   The chairman of the University's Department of Surgery, Dr. Timothy Fabian, solicited proposals from a number of possible contractors for purposes of this project.   While JIT might otherwise have been considered for this project, due to the historic concerns regarding JIT's equipment and service, no serious consideration was given to including JIT in the request for proposals.   Again, it is to be noted that the University's medical school faculty were not employees of The Med for purposes of this process, although, over time, as physicians practicing at the hospital, they certainly had noted their displeasure with JIT's equipment and services.   The Med reasonably relied upon their expertise and sincerity in making those complaints regarding JIT.

Problems with JIT's equipment and services continued to be noted throughout the spring and summer of 2002.   Representatives of The Med began to document, in writing, various complaints regarding JIT. These written notices of complaint were shared with JIT's site manager, Marilyn Rucker.   Unfortunately, JIT generally failed to rectify the various complaints and concerns of which they were

9

notified.   During this time, The Med's representatives determined that JIT's services would have to be terminated based upon patient safety concerns.

By October, 2002, The Med reached a decision to terminate JIT's services and replace JIT with Stryker Corporation/Stryker Endoscopy.  At that time, The Med and Stryker entered into a contract.   On October 21, 2002, The Med sent written notice to JIT terminating its services effective on November 21, 2002.

Throughout this litigation, JIT has attempted to make much of the fact that The Med reached an agreement with Stryker before notifying JIT of the termination of JIT's services.   While this is true, The Med elected to enter into a contractual relationship with Stryker before terminating JIT's services out of concern for the safety and welfare of The Med's patients.   The Med was fearful that, if JIT was told of its termination before a contractual understanding had been reached with Stryker, JIT would simply discontinue services at The Med, thereby leaving The Med without any surgical support.   As against this risk, The Med contracted with Stryker and made arrangements for Stryker to provide services on an emergency basis if JIT elected to immediately discontinue service at The Med.

## STIPULATED FACTS

1.   A valid contract existed between JIT and The MED.

10

2.    On October 21, 2002, The Med sent a letter to JIT stating
that the contract would be terminated 30 days from the date of the
letter.

## DISPUTED FACTS

1.    Whether The Med provided written notice to JIT of
problems and concerns regarding JIT's equipment and services;

2.    Whether The Med provided JIT with verbal notice of
problems and concerns regarding JIT's equipment and services;


3.    Whether the parties course of performance of the subject
contract reached a point where The Med would afford verbal notice
and JIT would act on verbal notice;

4.    Whether JIT rectified any and all problems or concerns of
The Med within 60 days of JIT's receipt of written notice;

5.    Whether JIT rectified any and all problems or concerns of
The Med within 60 days of its receipt of verbal notice;

6.    The nature, extent, and scope of the various problems
with JIT's equipment and services;

7.    Whether the deficiencies in JIT's equipment and services
presented patient safety hazards;

8.    The basis for The Med's decision to terminate JIT's
contract;

11

9.    Whether The Med's decision to terminate JIT's contract was pretexual in nature;

10.   The basis for The Med's decision to enter into a contractual relationship with Stryker;

11.   The basis for the timing of The Med's decision to terminate JIT's services;

12.   Whether JIT actually rectified any problem or concern of the hospital;

13.   The sufficiency of equipment provided by JIT at The Med;

14.   The sufficiency of technical support provided by JIT at The Med;


15.   The amounts spent by JIT to purchase new equipment or upgrade existing equipment used at The Med;

16.   The amount of profit, if any, JIT has lost as a result of the termination of its contract;

17.   The appropriate method for measuring JIT's claimed monetary damages;

## CONTESTED ISSUES OF LAW

The contested issues of law are as follows:

A.    Plaintiff

12

1.    Whether The MED breached the contract as a matter of law.

2.    Whether The MED provided proper notice to JIT as required by the contract.


B.    Defendant

1.    Whether The Med breached the contract as a matter of law;

2.    Whether JIT breached the contract as a matter of law;

3.    The nature of the notice required to express The Med's problems/concerns pursuant to the contract;

4.    Whether the parties' course of performance of the contract has resulted in the parties' waiver of a written notice requirement;

5.    Whether The Med is entitled to a jury instruction that JIT's failure to rectify any problem or concern of The Med, within 60 days of receipt of written notice, justified The Med's termination of the subject agreement;

6.    The appropriate means by which the court should determine whether JIT had actually rectified any problem or concern expressed by The Med (i.e., whether the applicable standard is objective or subjective);

13

7.   Whether The Med's representatives are the sole source of competent, material and relevant evidence as to whether JIT had rectified any problems or concerns expressed by The Med;

8.   As a matter of evidence, whether any testimony by JIT's representatives that they had actually rectified problems or concerns expressed by The Med constitute inadmissible speculation;

9.   The legal measure of any monetary loss or damage JIT has sustained as a result of the termination of the subject contract and the appropriate legal means of computing such loss.

## EVIDENTIARY DISPUTES

A.   Plaintiff

1.   The Undated Letter should be excluded from the trial.

2.   The letter from Randy Littleton to Marilyn Rucker, dated July 8, 2002, should be excluded from trial.

3.   The memorandum dated September 3, 2002, should be excluded from trial.

4.   The testimony of physicians other than Dr. Madan should be excluded from trial.

B.   Defendant

1.   It is The Med's position that the plaintiff's four pending motions in limine should be denied by the court for reasons set forth in The Med's opposition memorandum;

14

2.   As set forth in the above referenced disputed issues of law, The Med respectfully requests that this court consider whether the contractual standard by which JIT must demonstrate that it "rectified" any problem or concern of The Med is objective or subjective.  If deemed to be subjective, this court should consider the resulting issue as to whether any testimony by JIT that it in fact "rectified" any problem or concern of The Med would constitute inadmissible speculation.

## PROPOSED EXHIBITS

The following is a list and brief description of all exhibits to be offered into evidence by the respective parties, (except exhibits to be used for impeachment only).  For all the listed exhibits, the parties stipulate that the documents are authentic, and these do not have to be authenticated by a keeper of the records.

A.   Proposed Exhibits That May Be Offered by Plaintiff. Plaintiff reserves the right to withdraw exhibits contingent upon the Court's rulings on Plaintiff's pending Motions in Limine:

P-1  Contract between JIT and The MED

P-2  Invoices and Transfer Forms

P-3  July 16, 2002, letter from Linda Duncan to Marilyn Rucker

P-4  August 29, 2002, letter from Jack Coenen to Linda Duncan

15

P-5  October 21, 2002, letter from The MED to JIT

P-6  October 22, 2002, letter from Jack Coenen to The MED

P-7  July 18, 2002, email from Dr. Madan to Linda Duncan

P-8  July 23, 2002, email from Dr. Madan

P-9  July 24, 2002, email from Rick Barnett to Dr. Madan and Dr. Madan's reply

P-10 August 6, 2002, email from Dr. Madan, to Linda Duncan and reply from Dr. Madan

P-11 September 9, 2002, email from Linda Duncan to Dr. Madan  (Defendant objects to this exhibit on the basis of FRE 403).

P-12 June 30, 2002, email to Dr. Fabian about supper with Dr. Madan

P-13 July 14, 2002 emails to and from Dr. Madan

P-14 July 15, 2002, email from Hollie Cardosi (Objection: hearsay)

P-15 Madan preference list

P-16 Madan preference list with Marilyn Rucker's notes

P-18 Mercer Reports

Plaintiff reserves the right to utilize any exhibits identified by the Defendants.

B.   Proposed Exhibits That May Be Offered by Defendant.

1.  Contract between JIT and The Med

16

2.   July 16, 2002 letter from Linda Duncan to Marilyn Rucker.

3.   October 21, 2002 letter from The Med to JIT

4.   July 15, 2002 letter from Atul Madan, M.D. to Linda Duncan.

5.   July 23, 2002 letter from Atul Madan, M.D. to Linda Duncan.

6.   September 1, 2002 letter from Atul Madan, M.D. to Linda Duncan.

7.   September 3, 2002 memorandum from Linda Duncan to Marilyn Rucker.

8.   Undated letter, circa June 19, 2002 from Linda Duncan to Marilyn Rucker.

9.   Original and reply reports of Cannon Ivy.

10.  Charts, graphs, and tables contained in the various Cnanon Ivy reports.

11.  Charts, graphs, and tables contained in the various Mercer reports.

12.  Letter from Randy Littleton of OSI to Marilyn Rucker, dated July 8, 2002.

13.  August 8, 2002 letter from Elizabeth Pritchard, M.D. to Linda Duncan.

14.  Any exhibit identified by plaintiff.

15.  Any exhibit necessary for impeachment.

### CHARTS, GRAPHS AND DIAGRAMS

The following is a list and brief description of any charts, graphs, models, schematic diagrams, and similar objects which will be used in opening statements or closing statements and for illustration purposes during testimony, but which will not be offered into evidence:

A.  Plaintiff

1.  Exhibits attached to the Mercer Capital Report (Although plaintiff reserves the right to introduce these into evidence).

2.  Timeline of events from the inception of the Contract through the termination of the Contract.  (Although plaintiff reserves the right to introduce these into evidence).

Plaintiff reserves the right to amend this list upon the Court's ruling on Plaintiff's pending Motions in Limine and reserves the right to use any charts, graphs, models, schematic diagrams, and similar objects that are identified by Defendants.

B.  Defendant

18

1.   Exhibits attached to Cannon Ivy reports (although defendant reserves the right to introduce these into evidence).

2.   Exhibits attached to Mercer Capital Report (although defendant reserves the right to offer these into evidence).

3.   Defendant reserves the right to rely on any demonstrative aids utilized or identified by plaintiff.

**WITNESSES**

The following is a list of witnesses whom the parties anticipate calling at the trial (excluding witnesses to be used solely for rebuttal or impeachment).  All listed witnesses must be present to testify when called by a party unless specific arrangements are made with the trial judge prior to commencement of trial.  The listing of a WILL CALL witness herein constitutes a representation, upon which opposing counsel may rely, that the witness will be present at trial in the absence of reasonable written notice to opposing counsel to the contrary.  The list of a MAY CALL witness constitutes a representation that counsel reasonably expects to call the witness at trial, but is not bound to do so.

A.   Plaintiff's Witness List

1.   Will Call

a.   Jack Coenen

b.   Marilyn Rucker

19

    c.   Brent McDade and/or Owen Johnson

  2.  May Call

    a.   Thomas Hink

    b.   Susan Raburn

    c.   Atul Madan, M.D.

    d.   Linda Duncan

    e.   Rick Barnett

Plaintiff reserves the right to call any witness listed by Defendant.

  B.   **Defendant's Witness List**

    1.  Will Call

      a. Linda Duncan, R.N.

    2.  May Call

      a. Martin Croce, M.D.

      b. Elizabeth Pritchard, M.D.

      c. Timothy Fabian, M.D.

      d. Susan Rayburn, R.N.

      e. Robert Yates, M.D.

      f. Gary Lipscomb, M.D.

      g. George Wood, M.D.

h.   Randy Littleton

i.   Judson W. Cannon and/or Richard A. Blount of Cannon

Ivy

j.   Jack Coene

k.   Marilyn Rucker

l.   Thomas Hink

m.   Hollie Cardozi

n.   Atul Madan, M.D.

o.   Linda Pulley, R.N.

p.   any witness listed by plaintiff

q.   any witness necessary for impeachment

r.   any witness necessary to authenticate any document

No exhibit or testimony of any witness, not identified in this Pre-Trial Order, will be admitted into evidence except upon good cause shown.

C.   <u>Will Testify By Deposition</u>:

1.   Plaintiff:

a.   Linda Duncan, portions of deposition as follows: 5:6-7, 16-22; 7:18-20; 11:21-25; 19:17-25; 20:1-25; 21:1-20; 25:21-25; 26-27; 28:1; 29:11-25; 30:1-10; 31:4-10; 32:25; 33:1-8; 36:4-14; 37-38; 39:1-4; 66:19-25; 67-68; 69:1-3; 71:10-25; 72-73; 74:1-15; 75:1-25; 76:20-25; 77-78; 79:1-9, 23-25; 80-81; 82:7-25; 83:1-14;

84:1-25; 85:1-22; 86:1-25; 87:1-12, 20-25; 88:1-25; 89:1-17, 23-25; 90-93; 94:5-25; 95-96; 97:1-8; 98:9-25; 99:20-25; 100-101; 102:1-9, 19-25; 103:1-25; 104-110; 111:1-10; 112:20-25; 113-116; 117:10-25; 118:1-25; 119:1-19; 120:8-25; 121-122; 123:1-8; 124:15-25; 125-126; 127-131; 132:1-2; 136-137; 138:1-2; 143:10-25; 144:1-25; 145:1-8, 15-25; 146-150; 151:1-2; 152-155; 156:1-8, 12-16; 157:5-25; 158:1-10, 16-23; 159: 8-25; 160:1-24; 161:25; 162:1-20, 25; 163:1-23; 165:23-25; 166-169; 170:1-12.   (Defendant objects to the referenced designations to the extent that the referenced passages include hearsay testimony as to statements made by others in either a verbal or written form).

b.   Rick Barnett, portions of deposition as follows:

5:6-8; 6:5-16; 36:13-25; 37:1-6; 48:4-6; 54:13-18, 24-25; 55:1-25; 56:1-14; 60:15-25; 61:1-25; 62:19-25; 63:1-23; 66:19-25; 67:1-4; 74:13-25; 75:1-25; 76:1-16; 77:24-25; 78:1-29.   (Defendant objects to the referenced designations to the extent that the referenced passages include hearsay testimony as to statements made by others in either a verbal or written form).

Plaintiff reserves the right to amend this list upon the Court's ruling on Plaintiff's pending motions in limine.

Indicate whether the entire deposition, or only portions thereof, will be used.   Not later than the day of trial, counsel

shall confer for the purpose of resolving all controversies concerning depositions. All such controversies not so resolved shall be submitted to the trial judge not later than the day of trial. All objections not submitted within that time are waived.

Plaintiff reserves the right to introduce all or portions of the following depositions:

a.   Thomas Hink, 3:18-23; 15:15-25; 16-32; 33:1-3; 47:1-25; 48:1-17; 52:13-25; 53:1-25; 54:15; 67:1-19; 69-97; 98:1-12; 100:21-25; 102:1-25; 103:1-2; 106:10-25; 107-109; 110:1-20.

b.   Atul Madan, M.D., 5:6-12; 22:19-24; 23:1-14; 31:10-24; 32:1-12, 14-24; 33:1-24; 37:11-24; 38:1-7; 39:1-24; 40:1-8; 46:17-24; 47:1-8; 53:22-24; 54-60: 61-63; 64:1-2; 86:17-12. (Defendant objects to the reading of all cited excerpts of the deposition of Atul Madan, M.D. on the basis of hearsay).

c.   Susan Raburn, 5:6-11; 17:6-25; 18:1-7, 26:16-25; 27-29.

Defendant reserves the right to introduce all or portions of the following depositions:

a.   Thomas Hink, all portions cited by plaintiff and specifically, 69-97; 100:21-25; 101:1-25; 102:1-18.

**TRIAL**

23

This is a jury trial to be tried before the Honorable Bernice Donald.  Counsel estimate the length of trial will be five (5) days.

This pre-trial order has been formulated at a pre-trial conference before the United States District Judge, notice of which was duly served upon all parties, and at which the parties attended as hereinabove shown.  Reasonable opportunity has been afforded for corrections or additions prior to signing.  This order will control the course of the trial, as provided by Rule 16, Federal Rules of Civil Procedure, and it may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

JUDGE

DATE: May 11, 2005

AGREED:

_____
Michael G. McLaren
Sherry S. Fernandez
Attorneys for Plaintiff
Black, McLaren, Jones & Ryland
530 Oak Court Drive, Suite 310
Memphis, TN 38117
(901) 762-0535

24

Thomas W. Lewis
Attorney for Defendant
Armstrong Allen, PLLC
80 Monroe Avenue, Suite 700
Memphis, Tennessee 38103
(901) 524-4926

K:\TWL\PLDGS\MED\JIT\Pre-trial.wpd

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 89 in case 2:02-CV-02891 was distributed by fax, mail, or direct printing on May 12, 2005 to the parties listed.

---

Nichole Elizabeth Soule'
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Jeff Smith
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103

Eric J. Plumley
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

Mark S. Norris
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Michael G. McLaren
BLACK MCLAREN JONES & RYLAND
530 Oak Court Dr.
Ste. 310
Memphis, TN 38117

Thomas W. Lewis
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

J. Brook Lathram
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

Mary Katherine Hovious
BASS BERRY & SIMS PLC- Memphis
100 Peabody Place
Ste. 900
Memphis, TN 38103

Sherry S. Fernandez
McLEARY DOMICO & KYLE, PLLC
100 Peabody Place
Ste. 1250
Memphis, TN 38103

Donna L. Boyce
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Honorable Bernice Donald
US DISTRICT COURT